IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Electronically Filed on February 10, 2005)

| | |
|---|---|
| **DUKE POWER**, A Division of DUKE ENERGY CORPORATION, Plaintiff, | |
| v. | No. 98-485C (Senior Judge Wiese) |
| **THE UNITED STATES**, Defendant. | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR RECONSIDERATION**

Alex D. Tomaszczuk
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for Plaintiff
Duke Power, A Division of
Duke Energy Corporation

Of Counsel:

Jay E. Silberg
David J. Cynamon
Walter F. Zenner
Michael G. Lepre
Daniel S. Herzfeld
Jack Y. Chu
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

February 10, 2005

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... ii

STATEMENT OF THE QUESTION PRESENTED .......... 2

STATEMENT OF THE CASE .......... 2

ARGUMENT .......... 5

I. THIS CASE SATISFIES THE STANDARDS FOR GRANTING A MOTION FOR RECONSIDERATION .......... 5

II. THE OPINION AND ORDER ERRONEOUSLY IGNORES A CONTROLLING DECISION OF THE FEDERAL CIRCUIT .......... 6

III. THE OPINION AND ORDER ERRONEOUSLY IGNORES BINDING DECISIONS OF THE D.C. CIRCUIT .......... 9

IV. THE COURT COMMITTED CLEAR ERROR OF LAW BY RELYING ON AN IRRELEVANT DECISION RATHER THAN ON THE CONTROLLING AND BINDING DECISIONS GOVERNING THIS CASE .......... 13

CONCLUSION .......... 17

# TABLE OF AUTHORITIES

## Cases


*Alabama Power Co. v. DOE*,
307 F.3d 1300 (11th Cir. 2002) ........ 9

*Bishop v. United States*,
26 Cl. Ct. 281 (1992) ........ 6

*City of Burbank v. United States*,
273 F.3d 1370 (Fed. Cir. 2001) ........ 5, 13, 14, 15, 16

*Doe v. United States*,
372 F.3d 1308 (Fed. Cir. 2004) ........ 8

*Fru-Con Constr. Corp. v. United States*,
44 Fed. Cl. 298 (1999) ........ 5

*Indiana Michigan Power Co. v. DOE*,
88 F.3d 1272 (D.C. Cir. 1996) ........ 2

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) ........ 12

*Int'l Air Response v. United States*,
324 F.3d 1376 (Fed. Cir. 2003) ........ 12

*Maine Yankee Atomic Power Co. v. United States*,
225 F.3d 1336 (Fed. Cir. 2000) ........ 3, 7

*Northern States Power Co. v. DOE*,
128 F.3d 754 (D.C. Cir. 1997) ........ 2, 5

*Northern States Power Co. v. DOE*,
1998 U.S. App. LEXIS 12919, Nos. 97-1064 et al. (D.C. Cir. May 5, 1998) ........ 9, 10, 14

*Northern States Power Co. v. United States*,
224 F.3d 1361 (Fed. Cir. 2000) ........ 3, 5, 7

*Roedler v. DOE*,
255 F.3d 1347 (Fed. Cir. 2001) ........ 6, 8, 9

*Stoll v. Gottlieb*,
305 U.S. 165 (1938) ........ 12

*United States v. Sherwood*,
312 U.S. 584 (1941) ........ 8

*Wisconsin Elec. Power Co. v. DOE,*
211 F.3d 646 (D.C. Cir. 2000) ........ 3, 11, 14

**Federal Statutes, Regulations and Rules**

28 U.S.C. § 1346 ........ 8

28 U.S.C. § 1491 ........ 2

Nuclear Waste Policy Act, § 119, 42 U.S.C. § 10139 ........ 4, 10

Nuclear Waste Policy Act, § 302, 42 U.S.C. § 10222 ........ passim

60 Fed. Reg. 21,793 (May 3, 1995) ........ 15

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **DUKE POWER**, A Division of DUKE ENERGY CORPORATION, Plaintiff, | |
| v. | No. 98-485C (Senior Judge Wiese) |
| **THE UNITED STATES**, Defendant. | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR RECONSIDERATION**

Plaintiff Duke Power ("Duke"), a division of Duke Energy Corporation, submits this memorandum in support of its motion for reconsideration of the Court's Opinion and Order dated January 31, 2005, which holds that the Court lacks subject matter jurisdiction over this action and transfers the breach-of-contract claims in this case to the U.S. Court of Appeals for the District of Columbia Circuit. Plaintiff respectfully submits that the Court (Sypolt, J.) committed clear error of law in determining that the Court lacks jurisdiction over Plaintiff's claim against the United States for damages arising from the breach by the Department of Energy ("DOE") of the Standard Contract for Disposal of Spent Nuclear Fuel ("SNF") and High-Level Radioactive Waste (the "Standard Contract"). Controlling decisions of the Federal Circuit, as well as decisions of other courts that are binding on this Court pursuant to principles of res judicata, demonstrate that this is a contract claim, not a challenge to agency action pursuant to Section 119 of the Nuclear Waste Policy Act of 1982 ("NWPA"). The Tucker Act gives this Court exclusive jurisdiction to adjudicate such breach-of-contract claims against the Government. Reconsideration of the Opinion and Order is necessary to prevent the manifest

injustice of halting this case in its tracks, after nearly seven years of litigation, without reaching the merits and based on a clearly erroneous jurisdictional ruling.

## STATEMENT OF THE QUESTION PRESENTED

Did the Court (Sypolt, J.) commit a clear error of law that will lead to manifest injustice when it ruled that Plaintiff's cause of action for breach of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste was not within the subject-matter jurisdiction of this Court under the Tucker Act, 28 U.S.C. § 1491, contrary to controlling decisions of the Federal Circuit and preclusive decisions of the D.C. Circuit?

## STATEMENT OF THE CASE

Since 1996, three different U.S. Courts of Appeals (the Federal Circuit, the D.C. Circuit and the Eleventh Circuit) have repeatedly and uniformly held that the Standard Contract is a contract, not a regulation; that DOE breached the Standard Contract by failing to perform its unconditional contract obligation to begin disposing of SNF by January 31, 1998; and that Standard Contract holders may pursue damage actions in this Court against the Government for DOE's breach of contract.

Following the D.C. Circuit's rulings in *Indiana Michigan Power Co. v. DOE*, 88 F.3d 1272, 1277 (D.C. Cir. 1996) and *Northern States Power Co. v. DOE*, 128 F.3d 754 (D.C. Cir. 1997) ("*Northern States I*"), Plaintiff and other utilities filed damage actions in this Court, pursuant to the Tucker Act, 28 U.S.C. § 1491(a). An effort by some utilities to pursue contract remedies against DOE in the D.C. Circuit was successfully opposed by the Government, which claimed that the D.C. Circuit lacked jurisdiction to consider such contract (as opposed to

statutory) claims. *See Wisconsin Elec. Power Co. v. DOE*, 211 F.3d 646 (D.C. Cir. 2000) ("*WEPCO*").

The Government then attempted to avoid the contract actions in this Court by arguing that the utilities were required to exhaust their administrative remedies under the Disputes Clause of the Standard Contract. In *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1341-42 (Fed. Cir. 2000) and the companion decision in *Northern States Power Co. v. United States*¸ 224 F.3d 1361 (Fed. Cir. 2000) ("*Northern States III*"), the Federal Circuit rejected that contention and held that the utilities could pursue their breach-of-contract claims in this Court. The Federal Circuit also affirmed the entry of partial summary judgment against the Government on the issue of liability, finding that it was indisputable that DOE had breached its unconditional contractual obligation to begin disposing of SNF by January 31, 1998, and was liable in damages for that breach. *Maine Yankee*, 225 F.3d at 1343. The Federal Circuit's decisions left no doubt that this Court is the proper forum to adjudicate such damage actions.

Consistent with these uniform appellate rulings, the parties and the various Judges of this Court have spent significant time and resources on the merits of the instant cases, focusing on such issues as the appropriate acceptance rate and the types of damages available for partial breach of contract. Four of the cases have gone to trial.[1] The parties also filed and briefed several important motions on damages issues, including cross-motions for summary judgment regarding the post-1998 SNF acceptance rate. Briefing on those motions was completed in the spring of 2003.

---

1 *Indiana Michigan Power Co. v. United States*, No. 98-486C (Hodges, J.); *Yankee Atomic v. United States*, No. 98-126C (Merow, S.J.); *Maine Yankee Atomic v. United States*, No. 98-474C (Merow, S.J.); *Connecticut Yankee Atomic v. United States*, No. 98-154C (Merow, S.J.).

This Court did not rule on those motions. Instead, on October 14, 2004, the Court (Sypolt, J.) issued an Order to Show Cause ("OSC"), in which it raised, sua sponte, the question whether the Court lacked subject matter jurisdiction over the present case and three similar cases pending before it on the ground that Section 119 of the NWPA, 42 U.S.C. § 10139, gives the U.S. Courts of Appeals exclusive jurisdiction to hear such claims. Among other things, the Court disagreed with the holdings of the D.C. Circuit in *Indiana Michigan* and *Northern States I* and concluded that those holdings were not res judicata because the Court believed, erroneously, that neither Plaintiff nor the other three utilities in the cases before it had been parties to those proceedings. *See* OSC at 11-13. The OSC also contained a lengthy but irrelevant discussion of whether Section 119 gives original and exclusive jurisdiction to the federal courts of appeals to review challenges to agency actions or inactions under all provisions of the NWPA, including Section 302(a)(5)(B). *See* OSC at 24-34. In essence, the OSC determined that the Standard Contract was a regulation, not a contract, and that therefore any challenges to DOE's action or inaction under the Standard Contract must be brought in the federal courts of appeals pursuant to Section 119. The OSC ordered the parties to show cause why the cases should not be transferred to the D.C. Circuit or dismissed for lack of jurisdiction.

In response, both Plaintiff and the Government disagreed with the Court's conclusion that it lacked subject matter jurisdiction. Plaintiff explained why the prior appellate decisions were either controlling (in the case of the Federal Circuit) or res judicata (in the case of the D.C. and Eleventh Circuits) with respect to the questions whether the Standard Contract is a contract and whether jurisdiction is appropriate in this Court. The Government acknowledged that it could

not depart from its repeated assertions in the prior cases in the D.C. Circuit and elsewhere that the Tucker Act provided this Court with exclusive jurisdiction over the utilities' claims.[2]

Nonetheless, in its Opinion and Order issued on January 31, 2005, the Court maintained its position that it lacked subject matter jurisdiction over this case. The Court again brushed aside the uniform and controlling case law on the issue and instead relied principally on *City of Burbank v. United States*, 273 F.3d 1370, 1373 (Fed. Cir. 2001), a case that it had not even cited in the OSC. The Court ordered that the breach-of-contract claims in this case be transferred to the D.C. Circuit, even though that court held unequivocally in *WEPCO* that it is not the proper forum for such claims.

**ARGUMENT**

**I. THIS CASE SATISFIES THE STANDARDS FOR GRANTING A MOTION FOR RECONSIDERATION**

Pursuant to RCFC 59(a), the Court has broad discretion to grant a motion for reconsideration upon a showing that the challenged ruling was based on a manifest error of law and that reconsideration is necessary to prevent manifest injustice. *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300-01 (1999), *aff'd*, 250 F.3d 762 (Fed. Cir. 2000) (table);

---

2 The Government did contend, however, that the Court was free to disregard the D.C. Circuit's holding that the Standard Contract imposed an unconditional obligation on DOE to begin disposing of SNF on January 31, 1998, thereby precluding DOE from relying on the "unavoidable delays" provision of the Standard Contract. In presenting that argument, the Government brazenly violated the D.C. Circuit's mandamus order in *Northern States I*, which expressly "preclude[s] DOE from excusing its own delay on the grounds that it has not yet prepared a permanent repository or interim storage facility." *Northern States I*, 128 F.3d at 758. The Government's argument also directly contradicts the Federal Circuit's holding in *Northern States III*: "[W]e hold that the unavoidable delays provision deals with delays arising after performance of the contract has begun, and does not bar a suit seeking damages for the government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998." *Northern States III*, 224 F.3d at 1367.

*Bishop v. United States*, 26 Cl. Ct. 281, 286 (1992). The present motion satisfies both of these criteria.

In issuing its Opinion and Order, the Court committed clear error of law in at least two respects. First, the Court ignored the Federal Circuit's controlling decisions holding that: (1) the Standard Contract is a contract, not a regulation; (2) Plaintiff and other utilities are entitled to pursue breach-of-contract claims against the Government for DOE's failure to meet its unconditional contractual obligation to begin disposing of SNF by January 31, 1998; and (3) this Court has jurisdiction over such claims. Second, the Court failed to recognize that the res judicata effect of decisions of other appellate courts is applicable not only to the parties but to the Court, and precludes the Court from making a contrary finding as to the nature of the Standard Contract or the Court's jurisdiction over the present case.

Reconsideration of the Opinion and Order also is necessary to prevent manifest injustice. This case has been pending for almost seven years, and the parties and judges have devoted substantial time and effort on the merits. Unless the Opinion and Order is vacated, it will, at a minimum, significantly disrupt and delay the resolution of these cases while the parties make an unnecessary trip to the Federal Circuit so that the Court of Appeals can confirm what it has already decided – that the Court of Federal Claims has subject matter jurisdiction over these cases.

## II. THE OPINION AND ORDER ERRONEOUSLY IGNORES A CONTROLLING DECISION OF THE FEDERAL CIRCUIT

In response to the OSC, Plaintiff explained that three controlling decisions of the Federal Circuit – *Maine Yankee*, *Northern States III* and *Roedler v. DOE*, 255 F.3d 1347 (Fed. Cir. 2001)

– contradicted this Court's conclusion that it lacked subject matter jurisdiction.[3] The Opinion and Order attempts to distinguish *Maine Yankee* and *Northern States III* on the ground that, in those cases, the Federal Circuit did not explicitly consider the issue whether Section 119 of the NWPA gives exclusive jurisdiction to the federal appellate courts over all claims involving the Standard Contract. *See* Opinion and Order at 12-13. In making that distinction, the Opinion and Order erred by missing the significance of *Maine Yankee* and *Northern States III.* Both decisions held explicitly that the utilities could pursue their breach-of-contract claims in the Court of Federal Claims and that DOE had in fact breached its unconditional *contractual* obligation under the Standard Contract to begin disposing of SNF by January 31, 1998. *Maine Yankee*, 225 F.3d at 1341-43; *Northern States III*, 224 F.3d at 1367. Those controlling holdings preclude this Court from finding, as it did in the Opinion and Order, that DOE's breach of the Standard Contract presents a statutory claim subject to judicial review in the federal appellate courts pursuant to Section 119 of the NWPA, rather than contract claims subject to the Tucker Act jurisdiction of the Court of Federal Claims.

Furthermore, the Opinion and Order simply ignores the decision in *Roedler*. In so doing, the Court committed clear error of law. *Roedler* expressly determined the jurisdictional issue that had been implicitly determined in *Maine Yankee* and *Northern States III*: that the Court of Federal Claims has Tucker Act jurisdiction over a claim that the Government is liable in damages for DOE's breach of its contractual obligation to begin disposing of SNF by January 31, 1998.

---

[3] *See* Plaintiffs' Response to the Court's October 14, 2004 Order to Show Cause at 16-17.

*Roedler* involved a putative class action on behalf of rate-paying customers of Northern States Power Company. The plaintiffs argued that they were third-party beneficiaries of the Standard Contract between DOE and Northern States, and in that capacity they were entitled to seek damages for DOE's breach of the contract resulting from its failure to meet the January 31, 1998 deadline. They also asserted an implied-in-fact contract claim. *Roedler*, 255 F.3d at 1350-51. The district court dismissed the complaint, and the Federal Circuit affirmed.

In doing so, the Court of Appeals first determined that both it and the district court had subject-matter jurisdiction over the case pursuant to the "Little Tucker Act," 28 U.S.C. § 1346(a)(2). *Roedler*, 255 F.3d at 1351. The jurisdictional requisites for the Tucker Act and the Little Tucker Act are identical (with the exception of the $10,000 limitation in the Little Tucker Act). *United States v. Sherwood*, 312 U.S. 584, 591 (1941) (concluding that the Little Tucker Act "did no more than authorize the District Court to sit as a court of claims and that the authority thus given to adjudicate claims against the United States does not extend to any suit which could not be maintained in the Court of Claims"); *Doe v. United States*, 372 F.3d 1308, 1313 (Fed. Cir. 2004). Thus, *Roedler* is exactly the jurisdictional ruling that the Opinion and Order erroneously claims has not been made by the Federal Circuit.

The jurisdictional finding in *Roedler* also necessarily required the conclusion that the rate-payers' third-party beneficiary claim, based on the Standard Contract, was a contract claim, not a challenge to a regulatory action subject to review under Section 119 of the NWPA. Furthermore, in upholding dismissal of the implied-in-fact contract claim, the Federal Circuit agreed with the district court that "the existence of an <u>express contract</u> between the United States and Northern States Power establishing their <u>mutual obligations</u> with respect to the fees at issue, negates the existence of an implied-in-fact contract between the United States and the utility's

customers on the same subject matter." *Id.* at 1353-54 (emphasis added). Again, the rejection of the implied-in-fact contract claim necessarily required a finding that the Standard Contract is a contract, not a regulation. *See also id.* at 1351 ("Applying the federal common law that governs the contracts of the United States, and taking note that a contract with the United States is to be construed and the rights and duties of the parties determined by application of the same principles of law as if the contract were between private individuals, we apply the principles of third party beneficiary law as developed in the common law and explained by precedent . . . .") (citations omitted).

Thus, *Roedler* determined the very jurisdictional issue addressed by the Opinion and Order, and precludes the contrary finding in the Opinion and Order that Section 119 of the NWPA deprives this Court of jurisdiction over utilities' damage claims for DOE's breach of the identical Standard Contract provision involved in *Roedler.* The Court is simply not free to ignore this controlling authority. The Opinion and Order should be vacated on this ground alone.

## III. THE OPINION AND ORDER ERRONEOUSLY IGNORES BINDING DECISIONS OF THE D.C. CIRCUIT

In the original OSC, the Court stated that it was free to disagree with the D.C. Circuit's decisions in *Indiana Michigan* and *Northern States I* because those decisions involved different utilities and therefore were not res judicata in this case. *See* OSC at 11-13. Plaintiff explained that, in fact, there was an overlap between the parties in those cases and therefore that they did have res judicata effect, as did the D.C. Circuit's subsequent decision in *Northern States Power Co. v. DOE*, 1998 U.S. App. LEXIS 12919, Nos. 97-1064 et al. (D.C. Cir. May 5, 1998) ("*Northern States II*") and the Eleventh Circuit's decision in *Alabama Power Co. v. DOE*, 307 F.3d 1300, 1314 (11th Cir. 2002). The Opinion and Order acknowledges the error in the OSC but

nonetheless concludes that these decisions are not binding because they did not address the jurisdictional question presented here and because, in any event, those decisions cannot be preclusive with respect to this Court's jurisdiction. *See* Opinion and Order at 9-12. The Opinion and Order is wrong in both respects.

In *Northern States II*, the D.C. Circuit rejected the utilities' request, pursuant to Section 119 of the NWPA, that the court order DOE to begin taking SNF in accordance with DOE's statutory obligation under Section 302(a)(5)(B) of the NWPA. The D.C. Circuit clarified its earlier decision in *Northern States I* by explaining that DOE's obligation to begin disposing of SNF by January 31, 1998, was a contractual obligation imposed by the Standard Contract, not a statutory obligation imposed directly by the NWPA. The court stated that its initial decision "describes the nature of the DOE's obligation, which was created by the NWPA and undertaken by the DOE under the Standard Contract. It does not place the question of contract remedies in this court, nor set up this court as a source of contract remedies outside the Standard Contract." *Id.* at *4 (emphasis added). According to the D.C. Circuit, "While the [NWPA] requires the DOE to include an unconditional obligation in the Standard Contract, it does not itself require performance. Breach by the DOE does not violate a statutory duty; thus, our jurisdiction to hear allegations of failure to take an action required under the NWPA, *see* 42 U.S.C. § 10139(a)(1)(B), does not provide a basis for a move-fuel order." *Id.* at *5 (emphasis added).[4]

[4] Conversely, however, the D.C. Circuit rejected the Government's contention that because the Tucker Act gives the Court of Federal Claims exclusive jurisdiction over contract claims against the government, the D.C. Circuit could not force DOE to treat its contractual duty to begin disposing of SNF by January 31, 1998, as unconditional. The court pointed out that "[t]he statutory duty to include an unconditional obligation in the contract is independent of any rights under the contract." *Id.*

*Northern States II* thus considered and decided the precise question addressed by the OSC and Opinion and Order: whether Section 119 of the NWPA gives the federal appellate courts exclusive jurisdiction over claims that DOE breached its Standard Contract obligation to begin disposing of SNF by January 31, 1998. The D.C. Circuit unequivocally answered that question in the negative, and repeated that conclusion in *WEPCO.* In that case, the Government moved to dismiss the claims of several utilities seeking a remedy for DOE's breach of its obligation to dispose of SNF. The Government argued:

> Section 302(a)(5)(B), 42 U.S.C. 10222(a)(5)(B), only requires DOE to undertake such an obligation [to dispose of SNF] in its contracts with the utilities, and DOE has fully satisfied that statutory directive. Because Section 302(a)(5)(B) does not further require performance, Section 119(a)(1)(B) does not authorize actions to enforce that deadline.
>
> . . . . <u>Section 119 . . . does not provide jurisdiction to enforce rights under the [Standard C]ontract</u>. That provision does not waive the sovereign immunity of the United States.

Respondents' Motion to Dismiss at 7-10, 13, 14, *Wisconsin Elec. Power Co. v. DOE*, 211 F.3d 646 (D.C. Cir. 2000) (No. 99-1342), A9-A14 (emphasis added). The court agreed with the Government, holding that the utilities' claims for breach of their contracts with DOE did not arise under the NWPA because the statute itself did not require performance of the obligation to begin disposing of SNF by January 31, 1998. *WEPCO*, 211 F.3d at 648. As the court explained, "a contract 'breach by the DOE does not violate a statutory duty.' <u>The Court of Federal Claims, not this court, is the proper forum for adjudicating contract disputes</u>." *Id.* (citation omitted, emphasis added).

Contrary to the statements in the Opinion and Order, this Court is not free to disregard the jurisdictional rulings of the D.C. Circuit for two reasons. First, as the Opinion and Order

itself acknowledges, a court has inherent authority to determine its own jurisdiction. *See* Opinion and Order at 11. The D.C. Circuit's decisions in *Northern States II* and *WEPCO* that Section 119 of the NWPA did not give that court jurisdiction over the utilities' breach of contract claims precludes this Court from telling the D.C. Circuit that it does have such jurisdiction.

Second, because *Northern States II* is res judicata, this Court is bound to apply that decision to the parties here. The Opinion and Order is clearly wrong in stating that res judicata binds only the parties, not the Court. Res judicata principles are binding even where the prior ruling involved questions of subject-matter jurisdiction and implicated questions of sovereign immunity. *Int'l Air Response v. United States*, 324 F.3d 1376, 1380 (Fed. Cir. 2003); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982). Furthermore, res judicata bars a court from questioning a prior court's decision on a contested issue, including the extent of the prior court's jurisdiction. *See Stoll v. Gottlieb*, 305 U.S. 165 (1938). As the Supreme Court there stated, "After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact." *Id.* at 172.

Accordingly, the Court committed a clear legal error of law in the Opinion and Order by ignoring the prior, binding decisions of the D.C. Circuit holding that the present claims against the Government are contract claims, not statutory claims, and that Section 119 of the NWPA does not give the appellate courts jurisdiction over such claims.

**IV. THE COURT COMMITTED CLEAR ERROR OF LAW BY RELYING ON AN IRRELEVANT DECISION RATHER THAN ON THE CONTROLLING AND BINDING DECISIONS GOVERNING THIS CASE**

Rather than adhere to the Federal and D.C. Circuit decisions described in Parts II and III above, the Court relied principally on *City of Burbank*, an earlier, unrelated decision of the Federal Circuit, which the Court did not even mention in the OSC. *See* Opinion and Order at 5-6. Even if the Opinion and Order had interpreted *City of Burbank* correctly, the Court was not free to ignore the Federal Circuit's controlling decision in *Roedler* that the Tucker Act provides jurisdiction over claims against the Government for DOE's breach of its Standard Contract obligations or the D.C. Circuit's binding decision in *Northern States II* that Section 119 of the NWPA does not give the federal appellate courts jurisdiction over such claims. In fact, however, a proper reading of the decision in *City of Burbank* confirms that it is fully consistent with *Roedler* and *Northern States II*, and that it does not support the conclusion reached in the Opinion and Order.

*City of Burbank* involved a breach-of-contract action against the Bonneville Power Administration ("BPA") arising out of a power sales contract. The contract included some provisions that were mandated by statute and others that were freely negotiated between the parties. The Court of Federal Claims dismissed the case for lack of jurisdiction, finding that the judicial review provision of the BPA's governing statute provided the Ninth Circuit with exclusive jurisdiction to hear all claims challenging BPA's actions taken pursuant to its statutory authority or obligations, which, in the court's view, included the contract actions challenged by Burbank. *City of Burbank*, 273 F.3d at 1376-77.

The Federal Circuit reversed, finding that the relevant judicial review provision gave exclusive jurisdiction to the Ninth Circuit only "where disputed contract provisions are

statutorily mandated or are arrived at via an administrative hearing under the APA in which the pertinent facts are reflected in an administrative record." *Id.* at 1380. The court observed that the contract terms that BPA allegedly had breached were not statutorily mandated and no pertinent facts relevant to the breach or the alleged damages were contained in an administrative record. *Id.* at 1380-81. Consequently, the court held that the city's breach-of-contract claims fell within the scope of the Tucker Act jurisdiction of the Court of Federal Claims. *Id.*

Based on that analysis, the Opinion and Order erroneously concludes that Section 119 of the NWPA applies to this case because the Standard Contract provision in issue was statutorily-mandated and the pertinent facts are contained in an administrative record. Opinion and Order at 6. The Opinion and Order is wrong in both respects. Although the NWPA mandated that DOE include in the Standard Contract an unconditional obligation to begin disposing of SNF by January 31, 1998, the NWPA did not require that DOE perform that contractual obligation. *See Northern States II*, 1998 U.S. App. LEXIS 12919 at *4-5; *WEPCO*, 211 F.3d at 648. Thus, the "final agency action" subject to review pursuant to Section 119 of the NWPA was the actual inclusion of the unconditional obligation in the Standard Contract, not the "downstream" consequences of DOE's failure to perform its underlying contractual obligations.[5] Accordingly, Section 119 provided the jurisdictional basis for the D.C. Circuit in *Indiana Michigan* and *Northern States I* to consider whether Section 302(a)(5)(B) of the NWPA mandated DOE to undertake a conditional or unconditional contract obligation to dispose of SNF. Conversely,

---

5 Unlike Section 119, the BPA judicial review provision at issue in *City of Burbank* applied not only to suits challenging final agency actions and decisions but also to suits challenging "the implementation of such final actions . . . ." 273 F.3d at 1378. It thus reflected a broader standard for appellate review than Section 119. Nonetheless, the Federal Circuit determined that Burbank's claim for breach of contract was appropriately filed in the Court of Federal Claims.

Section 119 does not apply to the present cases, which involve no question of what the NWPA mandates. The present cases, like the breach-of-contract action in *City of Burbank*, involve only the question of whether DOE breached its obligation and, if so, the damages to which the utilities are entitled for that breach. As in *City of Burbank*, such breach-of-contract actions fall squarely within the scope of this Court's Tucker Act jurisdiction.

The Opinion and Order also clearly erred in concluding that there is an administrative record upon which these breach-of-contract cases can be decided. Again, the Court confused the proceedings leading to the litigation over the nature of DOE's statutory obligations under the NWPA with the current litigation over the effects of DOE's failure to perform its contract obligations under the Standard Contract. The appeal in *Indiana Michigan* was based on an administrative record in the form of DOE's Final Interpretation of Nuclear Waste Acceptance Issues, 60 Fed. Reg. 21,793 (May 3, 1995), in which DOE determined that Section 302(a)(5)(B) of the NWPA required DOE to include only a conditional provision in the Standard Contract to begin disposing of SNF by January 31, 1998 if there was an operational repository by that time. The D.C. Circuit had jurisdiction under Section 119 of the NWPA to review DOE's statutory interpretation.

The administrative record relating to DOE's 1995 statutory interpretation has little if anything to do with the present cases involving the financial impact of DOE's breach of the January 31, 1998 performance date specified in Article II of the Standard Contract. Indeed, it would no doubt come as a great surprise to the parties to these various damage cases, who have been conducting intensive and extensive fact discovery, as well as to the Judges of this Court who have been presiding over these cases, to learn that all of that damages discovery was unnecessary because there is an administrative record that contains all the information needed to

decide these claims. The questions presented in these damage actions simply cannot be determined on the basis of an administrative record. On the contrary, the absence of an administrative record underscores the error in concluding that the federal appellate courts have exclusive jurisdiction under Section 119 of the NWPA to decide these cases. Appellate courts are simply not designed or equipped to hear and resolve the numerous factual issues that are involved in these cases. *City of Burbank* teaches that in breach-of-contract cases like these, "jurisdiction over alleged contractual breaches involving facts outside an administrative record lies with the Court of Federal Claims." 273 F.3d at 1380.

In short, *City of Burbank* confirms that this Court, not the federal appellate courts, has jurisdiction over this case. The Court committed clear error of law by concluding otherwise in the Opinion and Order.

## CONCLUSION

The Opinion and Order is an extreme and unwarranted departure from the uniform, controlling case law holding that the Court of Federal Claims is the appropriate forum to adjudicate the utilities' damage claims against the Government for breach of DOE's unconditional obligation under the Standard Contract to begin disposing of SNF by January 31, 1998. The holding of the Opinion and Order to the contrary represents clear error of law and results in manifest injustice, making reconsideration appropriate.

For all of the reasons stated above, Duke respectfully requests that the Court grant this motion, vacate the Opinion and Order and proceed with the merits of this case.

Dated: February 10, 2005

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for Plaintiff
Duke Power, A Division of
Duke Energy Corporation

Of Counsel:

Jay E. Silberg
David J. Cynamon
Walter F. Zenner
Michael G. Lepre
Daniel S. Herzfeld
Jack Y. Chu
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)