**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on May 27, 2005)

| | |
|---|---|
| **DUKE POWER**, A Division of DUKE ENERGY CORPORATION, Plaintiff, | |
| v. | No. 98-485C (Senior Judge Wiese) |
| **THE UNITED STATES**, Defendant. | |

**UNOPPOSED MOTION FOR ENLARGEMENT OF TIME AND MOTION FOR CLARIFICATION REGARDING AUDIT PROCESS**

Pursuant to RCFC 6, 6.1, & 7, Plaintiff Duke Power, a division of Duke Energy Corporation ("Duke"), through its undersigned counsel, respectfully submits its (1) unopposed motion for an enlargement of time of 103 days from July 1, 2005 to October 11, 2005 to submit its expert reports with its auditable past and future damages, (2) unopposed motion for enlargement of time of 98 days from July 21, 2005 to October 27, 2005 (or another date convenient to the Court) to conduct a telephone conference to schedule further proceedings in this case, and (3) motion for clarification regarding the threshold for producing records and the manner by which the Government will conduct its audit. Additionally, Duke respectfully requests that the Court convene a short telephone conference to discuss the motion for clarification.

## I. UNOPPOSED MOTIONS FOR ENLARGEMENT OF TIME

For the same reasons explained during the March 29, 2005 telephone conference between counsel and the Court in *Northern States Power Co. v. United States*, No. 98-484C, Duke will need additional time to provide its past and future damages in auditable form. Similar to the

situation in *Northern States*, Duke originally understood its obligation to submit an "auditable claim letter" as only encompassing past incurred costs. Based on this Court's conclusion in *Northern States*, however, Duke now understands that it must present its complete past and future damages claim in one submission. Duke is prepared to provide that submission, including its expert reports, detailing both its past and future damages with supporting documentation, by October 11, 2005. Also, Duke correspondingly requests that the Court move the telephone conference scheduled for July 21, 2005 to October 27, 2005 (or another date convenient for the Court). This is Duke's first motion for enlargement for this purpose. Counsel for the Government, Mr. Russell Shultis, has stated that the Government does not oppose Duke's motion for enlargement to submit its expert reports and to move the telephone conference. Counsel for the Government has stated that October 27, 2005 is a convenient date for the Government to conduct the telephone conference.

## II. MOTION FOR CLARIFICATION

Duke also moves for clarification regarding the threshold for producing records and seeks to develop some basic ground rules and mutually acceptable sampling techniques for the conduct of any audit the Government plans in this case. In *Northern States*, the Court set a $5,000 minimum threshold for producing documentation to support the plaintiff's claim letter. For a variety of reasons, Duke respectfully requests that the $5,000 threshold be increased to $10,000 in this case.

First, it appears that Duke, which operates three separate nuclear plants – Oconee, McGuire, and Catawba – and has constructed two dry storage facilities (with a third under construction), will simply have many more damages documents to review and produce than Northern States. By way of comparison, Northern States operates two plants, Prairie Island and

Monticello, and to date has only constructed one dry storage facility (at Prairie Island). Duke presently estimates that it will have to assemble and review records supporting approximately 50,000 separate transactions in connection with the compilation of its damages claim and expert reports. Most of these transactions are of the small dollar variety that fall below even the $5,000 threshold. If the $5,000 threshold is adopted, Duke currently estimates it will produce documentation supporting approximately 800 transactions capturing 80% of its claimed past costs. Notably, if the threshold is increased to $10,000, Duke estimates that it will produce documentation supporting approximately 75% of its claimed costs, or a reduction of only 5%. However, the number of separate transactions that must be reviewed, assembled and produced drops by roughly 50%, from approximately 800 to approximately 400. Accordingly, increasing the threshold from $5,000 to $10,000 will reduce the volume of supporting documents that have to be produced by one-half, while still providing substantial auditable coverage – 75% – of the costs claimed. Stated alternatively, if the threshold remains at $5,000, approximately twice as many documents will have to be produced while increasing the auditable coverage of claimed costs only slightly – by roughly 5%, from 75% to 80%.

Second, Duke is a publicly-traded utility whose operations are regulated both by the Federal Energy Regulatory Commission as well as various state public service commissions. Its costs are routinely audited by its internal auditors, its external auditors, and by various governmental entities. The likelihood that Duke could – or would – fabricate costs in the regulatory setting in which it operates is remote. In that regard, Duke understands that the purpose of the auditing process here is to enable the Government to determine that the costs claimed by Duke in its damages submission have, in point of fact, been incurred. In turn, the Court has expressed an interest in minimizing (or eliminating) any disputes at trial over whether

a cost was incurred and the amount of that cost. If this is the purpose of the auditing process, adoption of a $10,000 threshold fully satisfies that purpose.

Third, after the Government reviews Duke's claim submission and expert reports, the Government certainly reserves the right to pose any follow-up questions it may have concerning any particular cost elements in Duke's claim. Duke expects to answer those questions expeditiously and provide any back-up documentation requested by the Government. Thus, the Government is not waiving its right to question or examine records concerning any particular cost of concern to the Government. What Duke is attempting to avoid is an unduly lengthy auditing process, stretched out over many months (or even years, as apparently occurred in the *Yankee* cases), in which substantial time and effort is devoted to verifying every single claimed cost, no matter its amount or nature. Some reasonableness standards must apply to the auditing process if this case is going to proceed expeditiously to trial. This is particularly true here, where the Government is the breaching party but nonetheless can be expected to argue that the costs claimed by Duke are not properly attributable to the Government's breach.

Finally, assuming the $10,000 threshold is acceptable to the Government, to further streamline the auditing process and provide additional evidence for its incurred costs, Duke is willing to provide the Government with a reasonable sampling of records supporting transactions that fall below the threshold. These transactions are likely to include documents establishing Duke's internal costs, such as salaries and wages, related labor burdens and overheads, and other miscellaneous expenses incurred by Duke in mitigating the Government's breach. If the Government wants such a sampling, Duke requests that the Government advise Duke and the Court of its preferred methodology for sampling a statistically random subset of the total relevant transactions.

Ultimately, Duke requests clarification of these issues at the outset of this process to assure that further proceedings in this case will not be delayed due to misunderstandings regarding the scope of supporting documents to be produced with Duke's expert reports. Counsel for Duke has spoken with counsel for the Government regarding these issues and the Government has no disagreement in principle regarding this methodology, but reserves the right to audit any costs that may be appropriate.

## III. CONCLUSION

For the foregoing reasons, Duke respectfully requests that the Court (1) grant Duke's motion for an enlargement of time from July 1, 2005 through October 11, 2005 to submit its expert reports with its past and future anticipated costs, (2) grant Duke's motion for enlargement of time, or to move, the telephone conference from July 21, 2005 to October 27, 2005 (or another suitable date), and (3) convene a short telephone conference to discuss the motion for clarification, with the goal of establishing a $10,000 threshold for initial documentation and the sampling techniques by which the Government will conduct any audit of documentation below that threshold.

Dated: May 27, 2005

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Daniel S. Herzfeld
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for Plaintiff
Duke Power, A Division of
Duke Energy Corporation

*Of Counsel*:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000
(202) 663-8007 (fax)

Document #: 1322213 v.4